HAMMETT v. HAMMETT.

1. WILL—DIRECTIONS—DISPOSABLE PROPERTY.—The intention of a testator, as expressed in his will, must be carried out when not in conflict with the law; and he may direct the order in which his property shall be subjected to the payment of his debts, and such direction is binding upon his distributees; but he may not dispose of that which he had already given to his children.

2. IBID.—ADVANCEMENTS.—A testator may, by his will, require his children to account for advancements, but if they are required to account only in case of there being a surplus for distribution, and there is no surplus, then the advances to them cannot be called technical advancements.

3. IBID.—IBID.—TECHNICAL WORDS should ordinarily be construed in their technical sense, but where a testator held notes and accounts on his children, which he directs should be collected on a certain contingency and applied to his debts before a specific devise to his wife shall be so applied, his direction must be carried out, even though he calls them advancements.

4. IBID.—ASSETS.—A judgment against a son-in-law of testator, paid by the executors, the testator being a surety, is an asset of the estate, and does

not stand upon the same footing as debts due by the children, which were to be collected only in case of deficiency of other assets.

5. WILL—ASSETS.—Debts once due by the children, but marked satisfied by testator in his lifetime, are not assets of the estate.

6. HOMESTEAD.— The question of the right of the children to a homestead is premature.

7. PETITION FOR REHEARING refused.

8. REMITTITUR—NEW TRIAL—WILL—JURISDICTION.—A petition to stay the *remittitur*, so that the petitioner may move the Circuit Court for a rehearing, on the ground of after-discovered evidence, cannot be entertained when it is *ex parte* and unsupported by affidavits, and where the alleged evidence would raise an issue of *devisavit vel non*—an issue of which neither this court nor the Circuit Court could now take original jurisdiction.

Before HUDSON, J., Spartanburg, November, 1891.

In addition to the statement of the case hereinafter made, it will be proper to give copies of the receipts of Mrs. Chaffin and Mrs. Brown. They were as follows:

"This is to show that my father has advanced me five hundred dollars in cash as so much advanced on his estate for which I have to pay interest annually from the third day of May, 1884; it being for cash which is value received. Received the 28th day of May, 1885. (Signed) Agnes Brown."

"This is to show that I have received from my father, as so much of my interest in his estate, a tract of land containing one hundred and eighty-two and one-half acres, for which I am to account to said estate $1,825, on which I promise to pay him, C. B. Hammett, during his lifetime 7 per cent. per annum; interest to begin the first day of December next, 1885, then the interest to be paid the first day of each December thereafter, which is value received, this the 11th day of August, 1885. (Signed) S. A. Chaffin."

"$940. 11 August, 1885. This is to show that my father, C. B. Hammett, has advanced me nine hundred and forty dollars in cash as so much advanced to me in his estate for which I have to pay interest to the said C. B. Hammett annually from date, it being for cash, which is value received. (Signed) S. A. Chaffin."

The master's report was as follows:

It appears from the testimony that Chas. B. Hammett, late of said county and State, died on the          day of October, 1887, leaving in force a will executed by him on April 7th, 1887, of which the plaintiffs are the duly qualified executors. The testator left a considerable estate, consisting mostly of land and certain notes or obligations, in writing, upon his children and his widow, Elizabeth Hammett, and his children, Benjamin F. Hammett, Elizabeth H. Brown, Sarah Ann Chaffin, Agnes R. Brown, Jas. T. Hammett, Vinity C. Lipscomb, Chas. B. Hammett, jr., Annie L. Bunten, W. Thomas Hammett, Alice Dearberry, and John M. Hammett, all of whom are parties to this action.

The object of this suit, instituted by the executors above named against the legatees and devisees of Chas. B. Hammett, deceased, was to obtain the instructions of the court as to the proper fund upon which to resort to pay the debts of the estate, amounting to about eight thousand dollars. If there had been no previous transactions between the parties, or the nature of the transactions had been understood clearly, and the estate had proven solvent, the construction of the will would have been comparatively a simple matter, but, as it is, the desire expressed in the will seems to be at variance with previous acts, and the whole matter is very much involved. The conflicting claims this court is called upon to determine arise principally in trying to reconcile the intention as expressed in the will with the previous transactions hereinafter shown.

There is now on hand belonging to the estate, as assets for the payment of creditors, about two hundred and seventy-seven acres of land, in lots, as set forth in the testimony, and two good notes, one on B. F. Bates, jr., and the other on M. C. Lee. In addition, the executors have some cash on hand, and many notes pronounced by them to be worthless. It is undisputed that these assets should be first exhausted before resorting to the notes or advancements made to the children.

There are two judgments paid off by the executors, one against M. C. Lipscomb, husband of Vinity C. Libscomb, for $5,121.23, amount due when paid off by executors, and the

other against C. B. Hammett, jr., for $5,173.73, obtained May 19th, 1886. Both these judgments were paid, by the executors, on April 25th, 1888. C. B. Hammett, the testator, was surety upon the notes for which the above judgments were recovered.

The transactions between the testator and his children, and sons-in-law, are set out in the following statement:

Agnes R. Brown. May 28th, 1885, testator deeded to above named defendant, three hundred and fifty-three acres of land, and took by way of receipt thereof paper marked A. A mortgage was taken from her husband, W. D. Brown, to secure the annual interest on the note. The amount of the note was $3,530, the land being valued at ten dollars an acre. Only one or two of these annual payments were made. At the same time he advanced to her five hundred dollars in cash, and took a receipt therefor.

Mrs. S. A. Chaffin. August 11th, 1885, testator gave Mrs. Chaffin on above date, a tract of land, containing one hundred and fifty-two acres, valued at eighteen hundred and twenty-five dollars, giving a receipt therefor. At the same time he gave her nine hundred and forty dollars in cash, receipt for which was given also.

W. T. Hammett. January 15th, 1885, testator gave W. T. Hammett a tract of land, and took his note therefor, for $3,180, and secured same by mortgage. Thereafter, on February 24th, 1887, C. B. Hammett endorsed on the mortgage the following words: "I hereby acknowledge satisfaction of the within mortgage, the note secured by this mortgage having been paid in full." The note and mortgage were not given up to W. T. Hammett. Testator also let defendant have two mules, on August 19th, 1886, and took his note therefor, for two hundred and twenty-five dollars. There should be a credit on this note of twenty-five dollars, as of its date.

Elizabeth H. Brown. April 7th, 1885, testator conveyed to defendant a tract of land, and she executed and delivered to him her note and mortgage for thirty-six hundred dollars.

C. B. Hammett, jr. November 18th, 1880, testator conveyed to said defendant a tract of land, taking his note and mortgage therefor. Payments were made on this note and endorsed

on the same. Besides this, testator held against the defendant several other notes, amounting in the aggregate to three hundred and thirty-five dollars.

J. L. Hammett. September 20th, 1886, testator conveyed to above defendant a tract of land, and took his note therefor, for one thousand and ninety dollars, secured by mortgage. This mortgage was afterwards released. Besides this, the testator held unpaid notes on said defendant aggregating the sum of one hundred and forty dollars.

Annie L. Bunten. January 16th, 1885, testator deeded to the defendant, Mrs. Bunten, a tract of land, and took her note and mortgage therefor. He also held notes against her husband for eight hundred and five dollars and five cents, and in addition was his surety to the bank for the sum of twenty-three hundred and eighty dollars, which his estate will be compelled to pay.

B. F. Hammett. Testator deeded to above defendant a tract of land, on which he took a mortgage, to secure note given for the purchase money thereof; afterwards said defendant deeded the lot back to Chas. B. Hammett. Testator holds notes against the defendant aggregating seven hundred and sixty dollars.

The following additional notes are held against the children and sons-in-law: against W. W. Dearberry, two notes aggregating $40; against W. N. Brown, husband of E. H. Brown, three notes aggregating $70.35; against M. C. Lipscomb, husband of Vinity C. Lipscomb, against whom defendant has no claim, $79.50. The question, then, is under the will which claims shall be enforced for the purpose of raising money to pay debts? The will leaves seven hundred and fifty acres of land as a specific devise to the widow of testator, one of the plaintiffs herein, and directs that all the other assets of the estate be exhausted before resorting to this for the payment of debts. The will provides for two contingencies: first, in the event of the assets being sufficient to pay debts without recourse on the widow's devise; and, second, in the event that the assets should prove insufficient without such recourse. In the event of the first contingency happening, the fifth clause of the will directs that, after payment of all debts and expenses, the sur-

plus be turned over to the children, to be divided equally between them, each one first accounting for whatever has been received by them or by their husbands during the lifetime of the testator, and with the further provision that they be called upon to account for any sum or sums Charles B. Hammett shall be called upon to pay as endorser or surety for them or their said husbands.

The second scheme, as set forth in the seventh clause of the will, is that in the event of the estate being insufficient to pay debts without recourse upon the children, all the assets of the estate, including advancements to children, should be exhausted before resorting to share of widow. It is only with the second contingency that we have to deal in this case, and from this fact arises the main difficulties. The conclusions of law, then, drawn from the above facts, are as follows:

As regards Mrs. Chaffin, the testator holds nothing against her at all, and she cannot be made to pay back anything into the estate. The gift to her having been absolute, the testator cannot by will compel her to contribute for the purpose of paying debts, provided she takes no further interest in the estate. It is argued that this can be done to carry out the intention of the testator, as the doctrine of advancements does not apply to cases of wills. The statute of 1791 provides that in all cases of intestacy, children must account for property received by them from the intestate during his lifetime. This clearly does not apply to wills, and legatees cannot be compelled to account unless the will so directs, and not even then, if the advanced child chooses to hold on to the advancement and take no further interest in the estate, in spite of any declaration of the testator to the contrary. The intent of the testator, as expressed in the will, is the law of the case, provided it does not contravene some other law, and, of course, the intention of a testator clearly expressed cannot give property that does not belong to the testator.

This same provision also applies to the case of Agnes R. Brown, against whom the testator holds no mortgage or promise to pay, and she cannot be made to account. Whatever may have been the intention of C. B. Hammett at the time he took

those papers, still there is nothing either in the papers them-
selves or in the testimony that shows he intended to enforce
them.   The release of the note and mortgage on W. T. Ham-
mett binds the estate, and he cannot be held liable on them.
The mortgage of J. L. Hammett has been released, leaving
only the note operative against him.   The judgment against
M. C. Lipscomb should be enforced, as the testator in the sec-
ond contingency so provided in his will, and the same holds
good of the judgment of C. B. Hammett, jr.   The specific be-
quest of factory stock, when the same shall be released by the
bank, to John M. Hammett, fails, from the fact that said stock,
instead of being released, was sold and converted into money;
and then, too, this provision only applies in the event of the
first contingency happening.   The mortgage over L. V. Ham-
mett, who is not a party herein, should be enforced.

I, therefore, recommend that the debts be raised from the
estate in the following manner : First, the executors should sell
all the land still in possession of the estate, and enforce notes
that are good, except those on the children, and foreclose the
mortgage on L. V. Hammett; second, as this will prove insuf-
ficient, the judgments against M. C. Lipscomb and Charles B.
Hammett, jr., should be collected; third, if there are still on
hand not enough assets to pay debts, the notes against the
sons-in-law and children should be collected, and the mortgages
foreclosed and land sold, except those mentioned above as hav-
ing been released, and except the mortgage of W. D. Brown;
and if this should prove insufficient, then so much of the land
set off to the widow, Elizabeth Hammett, as may be necessary
for that purpose; land notes on the children not to bear interest.

The judge's decree was as follows:

After a thorough discussion and investigation of the will of
C. B. Hammett, deceased, and of the evidence, I am convinced
that the construction of the will by the master, and the plan
for raising assets for the payment of the debts of the estate
reported by him, are correct, except as hereinafter modified.
When C. B. Hammett conveyed lands and money to his chil-
dren, and took their papers for the amount therein stated, he

clearly intended (and this intention is further sustained by the evidence in the case) that those evidences of indebtedness should be retained by himself, in lieu of the property with which he parted, so that thereafter he should have it in his power, by will or otherwise, to enforce collection, if he should so desire. When he came to make his will, this power still remained in him, except as to the notes and mortgages of W. T. Hammett and of B. F. Hammett for $1,810, which he released, as satisfied, during his life. Notwithstanding the papers signed by Mrs. Chaffin and Mrs. Agnes Brown are in different shape from the notes signed by the others, still, from the papers themselves and the testimony in the case, it is clear that, at the time, they were considered and recognized by Hammett and the parties themselves as notes—promises to pay, and interest bearing—which can be enforced. He exercised this power in the seventh clause of his will, wherein he directs the collection of them, before resorting to the property devised and bequeathed to his widow, should it become necessary, in order to raise assets to pay his debts. The evidence shows that such necessity has arisen.

The plan to be followed by the executors of his will is as follows:

First. The assets on hand, consisting of land, money, and choses in action, must be reduced to money; also, these other assets on hand must be enforced and collected, to wit: the judgments against M. C. Lipscomb and C. B. Hammett, jr., and Alex. Bunten, as they represent property in hands of the executors which they received under the will, as first applicable to debts.

Second. As those assets will prove insufficient, by reason of the insolvency of Alex. Bunten, the note and mortgages upon Mrs. L. V. Hammett must be collected, or so much thereof as shall be necessary to pay the remainder of the estate and the expense of administration.

Third. Should there still remain debts or expenses unpaid, such deficiency must be raised by collecting *pro rata* from the evidence of the indebtedness in the hands of the executors against the children and sons-in-law of deceased, the only ex-

ception being the said notes and mortgages of W. T. Hammett and B. F. Hammett, all the others being collectable, including those upon Mrs. Chaffin, Mrs. Agnes Brown, J. L. Hammett, and C. B. Hammett, jr.; and should it develop that the *pro rata* cannot be collected from any of the papers, such deficiency must be collected from the other good papers *pro rata.*

Fourth. If, after all the estate has been exhausted, there still remains a balance, such balance must be realized from the land devised to the widow.   *  *  *

Let the report be reformed herewith.   All exceptions inconsistent herewith are overruled.

*Messrs. Carlisle & Hydrick,* for Mrs. Chaffin.

*Messrs. Duncan & Sanders,* for Mrs. Brown.

*Messrs. Nicholls & Moore,* for M. C. Lipscomb.

*Messrs. S. T. McCravy* and *W. S. Thomason,* for W. T. Hammett and C. B. Hammett, jr.

*Mr. Stanyarne Wilson,* for plaintiffs, respondents.

November 28, 1892.   The opinion of the court was delivered by

MR. JUSTICE POPE.   The only questions presented to this court in this cause, are those raised in the grounds of appeal exhibited by five of the defendants, namely, Mrs. Elizabeth H. Brown, Mrs. Agnes R. Brown, Mrs. S. A. Chaffin, Mrs. Vinity C. Lipscomb, and M. C. Lipscomb, to so much of the decree rendered by his honor, Judge Hudson, herein, on the 6th day of November, 1891, as is covered by appellants' exceptions alleging error therein.

The grounds of appeal presented by the defendants, M. C. Lipscomb and Vinity C. Lipscomb, are: 1. That his honor, Judge Hudson, erred in not holding, that when C. B. Hammett endorsed the note of M. C. Lipscomb at the bank (the National Bank of Spartanburg, S. C.), he intended to make an advancement to his daughter, Vinity C. Lipscomb, and that he never, at any time afterwards, intended that M. C. Lipscomb should

pay any part thereof, and that no such intention appears in his will. 2. In not holding that such endorsement was an advancement, for which C. B. Hammett intended his daughter to account, and he could not afterwards direct its collection as against M. C. Lipscomb. 3. In holding that the executors should proceed to collect the judgment against M. C. Lipscomb as property on hand first applicable to debts. 4. In not holding that none of the children or sons-in-law of C. B. Hammett should be required to pay any money for the purpose of paying debts, but that they should be paid from tract of land devised to Mrs. Hammett, his widow. 5. In not holding that if any of the children or sons-in-law of C. B. Hammett are required to pay in any money to pay debts, that all, except B. F. Hammett, should contribute in proportion to the amount they had severally received, and in holding that W. T. Hammett was, and is, released from any liability to so account. 6. In not sustaining the exceptions of these appellants to the master's report. 7. In not holding that the defendant, M. C. Lipscomb, was entitled to homestead.

The grounds of appeal of Mrs. E. H. Brown were as follows: That his honor, Judge Hudson, erred: 1. In not holding that all of the property belonging to C. B. Hammett at the time of his death, including the property devised and willed to his widow, should be exhausted before requiring any of his children or sons-in-law to contribute anything towards the payment of his debts. 2. In not holding that the property and money given to this defendant was an advancement, and that the executors and creditors had no right to call upon her to refund to the estate any of the said advancement. 3. In not holding, at least, that if this defendant refunded any of said property or money received by her, that C. B. Hammett and W. T. Hammett should also account for the money or the lands advanced or loaned to them, and for the notes and mortgages given by them to C. B. Hammett, deceased. 4. In not holding that, at least, this defendant, Elizabeth H. Brown, should only pay back to the estate her share of the deficiency *pro rata* among all the children, according to the amount received by them. 5. In not finding that this defendant was entitled to the homestead

exemption allowed by law.  6. In holding that when C. B. Hammett converted lands and gave money to his children, and took papers for the amounts, he clearly intended (and this intention was further sustained by the evidence in the case) that those evidences of indebtedness should be retained by himself in lieu of the property with which he parted, so that thereafter he should have it in his power, by will or otherwise, to enforce their collection, if he should desire, and in holding, that when he made his will, this power still remained in him, and that he exercised the same.  7. In holding, in the plan to be pursued by the executors, that if there should remain any debts or expenses unpaid, such deficiency must be raised by collecting *pro rata* from the evidences of indebtedness in the hands of the executors against the children and sons-in-law of the deceased, the only exceptions being the notes and mortgages of W. T. Hammett and B. F. Hammett; all the others being collectable, including those upon Mrs. Chaffin, Mrs. Agnes Brown, J. L. Hammett, and C. B. Hammett, jr.; and should it develop that the *pro rata* cannot be collected from any of the papers, such deficiency must be collected from the other good papers *pro rata*.

The exceptions presented by Mrs. Agnes Brown and Mrs. Chaffin were:  1. That his honor erred in holding that the land advanced to them by their father, and conveyed by him to them by deed, should be subjected to the payment of the debts of the said C. B. Hammett.  2. That his honor erred in not holding that the land devised to Elizabeth Hammett should be exhausted before the land advanced to these defendants.  3. That his honor erred in not sustaining the master's report, in so far as it relates to these defendants.  4. That his honor erred in not ruling and holding that each of these defendants are entitled to a homestead exemption.

We will now consider the matters involved in these several appeals, but not in the order suggested by appellants.

How should this will be construed?  For a proper understanding of this question, it will be necessary to state substantially, without copying, what we understand to be the provisions of the will which the court is called upon to con-

strue:[1] 1st. The testator authorized his executors to sell so much of his personal and real property, except such as is specifically bequeathed or devised, as may be necessary for the payment of his debts. 2d. By the second clause, he makes a specific devise and a specific bequest to his widow. 3d. He again authorizes and directs his executors to sell all the rest and residue of his estate, both real and personal, after first setting apart to the widow that which is specifically devised and bequeathed to her. 4th. By the fourth clause, he directs his executors to proceed to collect all of his choses in action, "except those upon my children and sons-in-law, as to which provision is hereafter made." 5th. By the fifth clause, he directs that when all of the property hereinbefore directed to be sold has been converted into money, and the evidences of indebtedness hereinbefore directed to be collected have been collected, and when all of his debts have been paid, then the executors are directed to divide the residue of such assets amongst his children in the manner prescribed, in which he proceeds to designate what each child is to account for, upon such division, so that the shares may be equalized. He then adds these words: "If it be found that any child has overdrawn his or her equal share of my estate, then he or she is to refund the excess to my said executor or executrix." 6th. This clause contains a provision as to the disposition of the factory stock, which, in the events which have occurred, has become nugatory. 7th. By this clause, the testator directs that, if the estate shall prove insufficient for the payment of his debts, all of it, including the claims against his children and his sons-in-law, must be first exhausted before resorting to any of the property devised and bequeathed to his wife. 8th. In the eighth clause, he declares that the purpose of his will is to devise and bequeath to his wife specifically the property mentioned in the second clause, and then to divide all of the balance of his estate, which may remain after the payment of his debts, equally amongst his children, charging each child as directed in the fifth clause.

---

[1]The "Case" contains no fuller statement.—REPORTER.

It seems to us that, looking solely to the terms of the will, there would be no difficulty in putting a proper construction upon it, for the testator has himself declared in the eighth clause, in very plain terms, what he intended should be the construction put upon it; and, of course, the court will be bound to carry out such intention, unless it comes in conflict with some rule of law. There can be no doubt that the testator intended that resort should not be had to the property which he gave to his wife for the payment of his debts, until all of the balance of his property of every kind and description had been exhausted, and there is as little doubt that a testator has a right to designate what property shall be first subjected to the payment of his debts, and no one, except a creditor, has a right to object. But it is equally true, that a testator cannot subject property to the payment of his debts, which, though once belonging to him, had been sold or given to a child during his lifetime, and had thus passed beyond his control. So that the practical inquiry here is whether the testator has undertaken to subject any property which during his lifetime had passed beyond his control, either by gift or sale to one or more of his children, to the payment of his debts.

It does not seem to us that the doctrine of advancements has any application to this case. While it is conceded that the law of advancements properly applies only in a case of intestacy, yet it is contended that a testator may, by his will, adopt that law as governing the distribution of his estate, and when he does so, it is applied just as in a case of intestacy. This is, no doubt, true (*Manning* v. *Manning*, 12 Rich. Eq., 428), but the question here is whether the testator has, by the terms of his will, indicated that the law of advancements shall be applied in the distribution of his estate. The only clause relied upon as affording any such indication is the fifth; but by the express terms of that clause the provisions therein contained can only apply under a contingency which has never occurred, and cannot now ever occur; and hence, so far as this question is concerned, that clause may be regarded as stricken from the will. The contingency upon which that clause was to apply, was that there should be a residue of the

estate, after the payment of the debts of the testator, to be distributed amongst the children; but it being conceded, as we understand it, and, whether conceded or not, it being manifest, that there is not, and cannot, be any residue for distribution, we are unable to discover anything to which the provisions of the fifth clause can be applied. At the utmost, that clause could only be regarded as indicative of an intention on the part of the testator that certain things should be regarded as advancements, while others should not be so regarded; but it must be remembered that such intention was only indicated in a certain contingency, which never has and can never occur.

Therefore, even if the question of advancement or no advancement could depend upon the intention, as seems not to be the case, where there is an intestacy (*Rees* v. *Rees,* 11 Rich. Eq., 86), yet it could have no effect here, when such intention has been indicated only in a contingency which never has and never can happen. And, as if to emphasize what was the real intention of the testator, he proceeds in the seventh and eighth clauses to declare, in the most explicit terms, that if it becomes necessary for the payment of his debts to resort to what are termed advancements to his children, such resort must be had, even to the extent of entirely exhausting them, before resort shall be had to any of the property specifically devised and bequeathed to his wife. We do not think that the testator, in using the terms "advanced" and "advancements," intended to use those words in their technical sense; for while it is true that the general rule is that technical words are to be understood in their technical sense, yet that rule is qualified, and does not apply, when it is apparent that they were used in a different sense. This, it seems to us, is abundantly apparent here; for if he had intended to use those words in their technical sense, why take notes for the money which he let his children have, and, above all, why should he have undertaken to charge these so-called advancements with the payment of his debts in a certain contingency, which has, in fact, arisen—something that he would, clearly, have had no power to do, if they were really advancements in a technical sense, and which we are bound to presume he must have

known.   The rule is clear, that when the testator uses words which, if given one interpretation, would express an illegal intention, but which, if susceptible of a different interpretation, expressive of a legal intention, the latter interpretation must be adopted rather than the former.

So that, as we have said above, the practical inquiry is whether the testator has undertaken to subject to the payment of his debts any property which, during his lifetime, had passed beyond his possession or control, by either sale or gift to his children.   Now it seems to us clear that the evidence of indebtedness which he held against his children or sons-in-law up to the time of his death, whether in the form of notes or accountable receipts, had not passed beyond his control, and, therefore, he had the right to subject the same to the payment of his debts; and in the contingency that has arisen, he has expressed his intention to so subject them.   This, as we understand it, is substantially the view taken by the Circuit Judge, and, therefore, we think his judgment should be affirmed,

As the appellant, M. C. Lipscomb, specially excepts to so much of the decree as makes him first liable for the amount paid by the executors on his note to the bank before resorting to the claims of the testator against his other children and sons-in-law, it may be as well to add, that we think the Circuit Judge has given a good reason for such a distinction.   So, too, the exception of this appellant, that the Circuit Judge erred in not including *all* of the children, except B. F. Hammett, who had reconveyed the land deeded to him to the testator, in the same category, cannot be sustained, for the reason, that such of the claims against the children as had been satisfied by the testator during his lifetime, could not, of course, be regarded as any part of the assets of his estate.

As to the claims of homestead, we are agreed that they cannot be now adjudicated, and must be left open, to be determined when the executors undertake to enforce collection from the parties setting up such claims.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed, and the cause is remanded to the

Circuit Court for such further proceedings as may be necessary to enforce such judgment of the Circuit Court.

In this case a petition for rehearing was filed by S. A. Chaffin, upon which the following order was endorsed, December 20, 1892,

> PER CURIAM. We have carefully considered this petition, and finding that no material fact or principle of law has been overlooked, there is no ground for a rehearing. It is, therefore, ordered, that the petition be dismissed, and the stay of the *remittitur* heretofore granted be revoked.

A petition for rehearing was also filed by M. C. Lipscomb and Vinity C. Lipscomb, upon which the following order was endorsed, December 20, 1892,

PER CURIAM. We have carefully considered this petition, and finding that no material fact or principle of law has either been overlooked or disregarded, there is no ground for a rehearing. It is, therefore, ordered, that the petition be dismissed, and that the stay of the *remittitur* heretofore granted be revoked.

In this case the defendant, M. C. Lipscomb, also presented a petition to one of the Justices of the Supreme Court, in which he alleges that "newly discovered testimony of the highest character, in regard to the imbecility and the total mental incapacity of C. B. Hammett, the testator herein—the said testimony covering the precise date of the execution of the will herein—presents an issue material to a just decision of said cause; and the omission of this fact, of the imbecility of said C. B. Hammett, from the consideration of the Supreme Court, overlooks one of the most material issues of the said case."

Upon this petition, counsel moved for and obtained a temporary stay of *remittitur*. Thereafter, on December 20, 1892, the following order was endorsed on this petition

PER CURIAM. This petition does not purport to be a petition for a rehearing, but simply for the stay of the *remittitur*, upon the ground that evidence of an important character has

been discovered since the hearing below, which will present "an issue material to a just decision of said cause." If, therefore, the application be regarded as a motion to suspend the appeal, in order to enable the petitioner to move the Circuit Court for a new trial, upon the ground of after discovered evidence, it cannot be entertained, for the reason, amongst others, that no notice of such a motion has been given, and no affidavits, making a *prima facie* showing, have either been served or presented to this court. Furthermore, it appears that the evidence is designed to raise an issue of *devisavit vel non*, of which issue neither this court nor the Court of Common Pleas can now take original jurisdiction. It is, therefore, ordered, that the application be refused, and the stay of the *remittitur* heretofore granted be revoked.